# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6016-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

D.D.,

 Defendant-Appellant,

and

K.D.,

 Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF K.D.
and S.D.,

 Minors.

_____

   Submitted May 13, 2019 – Decided May 20, 2019

   Before Judges Sabatino and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FG-08-0038-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Durrell Wachtler Ciccia, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy M. Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant D.D. (Dee)[1] appeals from an order terminating her parental rights to her children K.D. (Kyle), born in June 2004, and S.D. (Sara), born in July 2007.[2] Judge Mary K. White entered the order for the reasons expressed in an oral opinion. We reject Dee's contentions that the Division of Child Protection and Permanency (Division) failed to meet its statutory burden under

---

[1] We use initials and fictitious names to identify the parties and the children to protect and preserve their confidentiality. R. 1:38-3(d)(12).

[2] The parental rights of the children's father, K.D., were also terminated. However, he did not appeal the order.

A-6016-17T3

each prong of the four-prong best interests test, codified at N.J.S.A. 30:4C-15.1(a), by clear and convincing evidence.

Based upon our standard of review, we give "deference to family court[s'] fact[-]finding" because of "the family courts' special jurisdiction and expertise in family matters[.]" Cesare v. Cesare, 154 N.J. 394, 413 (1998). The judge's findings of fact are not disturbed unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006).

In our review of the record, Judge White carefully considered the evidence presented, and determined that the Division had satisfied all of the legal requirements to obtain a judgment of guardianship. Her oral opinion tracks the statutory guidelines of N.J.S.A. 30:4C-15.1(a), in accord with In re Guardianship of K.H.O., 161 N.J. 337 (1999), In re Guardianship of DMH, 161 N.J. 365 (1999), and New Jersey Division of Youth & Family Services v. F.M., 211 N.J. 420 (2012), and is supported by substantial and credible evidence in

the record. Thus, given our assessment of the best interests test that follows, we affirm substantially for the reasons the judge expressed in her thoughtful and thorough opinion.

Prong One

As to prong one, the Division must prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). "[T]he relevant inquiry focuses on the cumulative effect, over time, of harms arising from the home life provided by the parent." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 289 (2007).

"Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights." In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992) (citing In re Guardianship of J.C., 129 N.J. 1, 18 (1992)). As a result, "courts must consider the potential psychological damage that may result from reunification[,] as the 'potential return of a child to a parent may be so injurious that it would bar such an alternative.'" N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 480-81 (App. Div. 2012) (quoting N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 605 (1986)).

"The absence of physical abuse or neglect is not conclusive." A.W., 103 N.J. at 605 (quoting In re Guardianship of R., 155 N.J. Super. 186, 194 (App. Div. 1977)). "A parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." DMH, 161 N.J. at 379. "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." Id. at 383.

Judge White found that the Division introduced credible evidence to support its contention that Dee's long history of abuse and neglect of her children caused them harm. Prior to being removed from their mother before the current guardianship proceeding, Kyle and Sara had been removed four times, but were reunified with their mother each time. This revolving door of custody caused them to feel abandoned and uncared for until they came under the care of their current separate resource families.

When in Dee's custody, the children would often have to feed themselves and get themselves ready for school. Dee would verbally abuse them. She failed to take advantage of the services offered by the Division to address her long-standing parenting, substance abuse addiction and mental health issues. She missed her bonding evaluation for this proceeding, and did not consistently visit

her children when they were under the Division's care and custody. Moreover, Kyle eventually had to be placed in a separate resource home from his sister because he developed anger issues, which caused him to physically abuse her and to be declared a juvenile offender for threatening to kill a schoolmate – leading to residential care and intense psychiatric treatment.

Judge White found compelling the respective testimony of Kyle and Sara, which was confirmed by the testimony of the Division's caseworker and its psychological expert, Dr. James Loving, Psy.D., regarding Dee's inability to take care of them, her mistreatment of them, and their happiness with and desire to be adopted by their resource families.[3]

With regards to Dee's argument that her substance abuse issue is insufficient to prove that she poses a danger to her children's health, development or safety, we disagree. Courts need not wait to act until a child is actually irreparably harmed by parental inattention or neglect. DMH, 161 N.J. at 383. Although Sara did not have any serious medical injuries, the record amply supports the judge's finding that she suffered harm as a result of her relationship with her mother. On the other hand, the harm to Kyle was more

---

[3] Judge White also read into the record a heartfelt and moving letter written to her by Sara expressing her desire to be adopted by her resource family because her mother is unfit to parent her.

severe, as evidenced by his aggressive behavior that led to him becoming a juvenile offender. Fortunately, together with the treatment he received, his resource father has been able to help guide him in the right direction with his supportive and loving care.

Accordingly, there was substantial credible evidence to support the judge's findings that Dee harmed and endangered her children, "threatens the child[ren]'s health[,] and will likely have continuing deleterious effects on [them]." K.H.O., 161 N.J. at 352.

Prong Two

As to prong two, the Division must prove that Dee is "unwilling or unable to eliminate the harm facing the child[ren] or is unable or unwilling to provide a safe and stable home . . . and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). That harm may include evidence that separating the children from their resource parents "would cause serious and enduring emotional or psychological harm . . . ." Ibid.

The Division can establish the second prong by proving that a "child will suffer substantially from a lack of stability and a permanent placement[,] and from the disruption of" a bond with the resource parents. K.H.O., 161 N.J. at 363. Because they are related, evidence supporting the first prong may also

support the second prong "as part of the comprehensive basis for determining the best interests of the child." DMH, 61 N.J. at 379.

Dee argues that even though she failed to comply with the Division's repeated demands for substance abuse treatment, she was not using drugs when the Division requested she receive treatment. She further alleges that it was never shown that her substance abuse resulted in harm to Kyle and Sara. The record, however, belies her assertions.

The judge determined that Dee failed to maintain a parental relationship with Kyle and Sara. She consistently missed the majority of her scheduled visits with her children. She refused to complete evaluations to assess her parenting capacity, her psychological needs and her substance dependency. Such failures evidence her unwillingness or inability to prioritize the needs of Kyle and Sara over her own self-centered wants.

These shortcomings were exacerbated by the fact that Dee was homeless for a time, and had no job or home of her own at the time of trial. At that time, she was living with an unidentified man and his mother, but did not offer that home for inspection or as a home for the children. She also failed to offer any plan for reunifying with her children.

Arguably, the most glaring example of her lack of concern towards Kyle and Sara was that when she was advised of the guardianship trial date on multiple occasions, she indicated that she would not be appearing. She remained true to her word and did not appear.

Hence, there was substantial credible evidence supporting the judge's findings that Dee is unwilling or unable to eliminate the harm facing the children, or is unable or unwilling to provide a safe home for the children.

Prong Three

As to prong three, the Division is required to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home[,] and the court [will] consider[] alternatives to termination of parental rights[.]" N.J.S.A. 30:4C-15.1(a)(3). This "prong of the [best interests of the child] standard contemplates efforts that focus on reunification of the parent with the child and assistance to the parent to correct and overcome those circumstances that necessitated the placement of the child into foster care." K.H.O., 161 N.J. at 354.

Dee argues the judge's determination that the Division made reasonable efforts to reunify the family was not supported by clear and convincing evidence. While she admits that her visits to see her children were inconsistent,

she maintains she was consistently affectionate with her children when they were with her. She claims her missed visits were often due to a lack of transportation and eventually her homelessness. Again, the record contradicts Dee's contentions.

Judge White found that the Division provided reasonable efforts to correct the circumstances that led to the children's placement. As noted above, Dee refused to take advantage of the services – offered by the Division throughout the numerous times the children were removed then reunified – that would enable her to properly parent Kyle and Sara. As for transportation, even though the Division provided Dee with transportation – door-to-door transportation and bus passes – to visit her children, she repeatedly did not show up for scheduled visits.

With regard to alternatives, the judge found that no suitable family members stepped forward to care for the children during any of their placements. The children's paternal grandmother was the only relative who was offered as a placement option after the children's last removal, but she was ruled out because she was living with someone who had an open case with the Division. Their respective resource parents were advised on adoption and Kinship Legal Guardianship (KLG), but they were fully committed to adopting.

10

Hence, there was substantial credible evidence in the record to support the judge's findings that the Division made reasonable efforts to provide services to help Dee correct the circumstances which led to her children's placement outside the home; and the court considered alternatives to termination of parental rights, such as KLG.

Prong Four

As to prong four, the Division must establish that sufficient credible evidence exists to show that the "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The issue is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with their natural parents than from the permanent disruption of their relationship with their resource family. In re Guardianship of J.N.H., 172 N.J. 440,478 (2002) (quoting K.H.O., 161 N.J. at 355).

Again positing that she was always affectionate with her children and her children returned the affection, Dee claims there is no doubt that Kyle and Sara would be harmed by terminating their relationship with her. Yet, she offers no proof to support her assertion.

Relying on the uncontroverted testimony of the caseworker and Dr. Loving, who observed the close relationship that formed between Kyle and Sara and their respective resource parents, the judge found that Dee was unable or unwilling to provide a safe and stable home for Kyle and Sara, and that a delay in a permanent placement will add to the harm they already suffered from Dee's inability to take care of herself. The judge found it telling that both children testified and unequivocally expressed their wishes to be adopted by their resource parents, and not be returned to their mother. The judge found they were with loving, caring families, and no additional harm would result from formalizing the termination of parental rights.

Hence, there was substantial credible evidence to support the judge's findings that terminating Dee's parental rights would not do more harm than good to Kyle and Sara.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6016-17T3